198 So.2d 338 (1967)
Norma MILLMAN, Appellant,
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION of BROWARD COUNTY and Mildred Horton, Appellees.
No. 629.
District Court of Appeal of Florida. Fourth District.
May 4, 1967.
*339 W. Herbert Moriarty, of Moriarty & Moriarty, Fort Lauderdale, for appellant.
Marshall G. Curran, Jr., of English, McCaughan & O'Bryan, Fort Lauderdale, for appellee First Federal Savings & Loan Ass'n of Broward County.
Sherwood Spencer, of Ellis, Spencer & Butler, Hollywood, for appellee Mildred Horton.
WILLIS, BEN C., Associate Judge.
This is an appeal from a summary final judgment in favor of the appellee, First Federal Savings and Loan Association of Broward County (hereafter referred to as First Federal), in a suit in which it was defendant and the appellant, Norma Millman, was plaintiff. After suit was filed the appellee, Mildred Horton, was, on motion of defendant, First Federal, made a party defendant and a cross-claim by First Federal was filed against her. As will hereinafter appear, the summary judgment in favor of First Federal rendered the cross-claim moot.
The facts are undisputed and simple. On or about January 10, 1953, Harry Hosea Horton established a joint savings account with First Federal in his name and in the name of plaintiff-appellant, Norma Millman, who was his stepdaughter. The account was a joint tenancy with right of survivorship. On November 29, 1960, Mr. Horton gave a power of attorney to appellee-defendant, Mildred Horton, his wife, which specifically empowered her "to handle my savings accounts with * * * First Federal Savings & Loan Association of Broward County * * * especially authorizing my said attorney to make withdrawals from said savings share accounts in said savings and loan associations. * *" On January 26, 1961, Mr. Horton was adjudged an incompetent in the County Judge's Court of Broward County and the order so adjudging was duly recorded the same day in the County Judge's records. On February 15, 1961, Mrs. Mildred Horton, pursuant to the power of attorney issued to her by Mr. Horton, withdrew all of the funds of the joint account of Mr. Horton and Norma Millman. On or about April 1, 1961, Mr. Horton died.
The plaintiff instituted the present action in February 1965 against First Federal in which she seeks to recover the amount which had been deposited to the joint account plus interest and costs. It is contended that the adjudication of incompetency, by operation of law, terminated the power of attorney from Mr. Horton to Mrs. Horton so that her withdrawal of the funds by Mrs. Horton was illegal, and that upon Mr. Horton's death the proceeds of this joint account became plaintiff's absolute property as the surviving joint tenant. The answer of First Federal admits the main factual allegations but denies the legal effect contended by the plaintiff.
It is established that First Federal and its responsible agents and employees had no actual notice or knowledge of the incompetency *340 of Mr. Horton at the time Mrs. Horton made the withdrawal of funds.
It appears to be conceded that, under the common law which has not been modified in Florida by statute or other effective means, a power of attorney that is not coupled with an interest is revoked by operation of law by the subsequent insanity of either party. See 44 A.L.R. 1310-11; 3 Am.Jur.2d, Agency, § 55. It follows that an adjudication of incompetency of either party will effect such a revocation, as being a circumstance which is inconsistent with a continuation of the agency. See 1 Fla.Jur., Agency, § 18.
However, it is contended that by law and by contract such revocation is not binding on a party who in good faith and in ignorance of the incompetency of a party acts in reliance upon such power of attorney.
By Sec. 709.01, Florida Statutes, F.S.A., it is provided:
"If any agent, constituted by power of attorney or other authority, shall do any act for his principal which would be lawful if such principal were living, the same shall be valid and binding on the estate of said principal, although he or she may have died before such act was done; provided, the party treating with such agent dealt bona fide, not knowing at the time of the doing of such act that such principal was dead. * * *"
It is contended that by analogy the same rule should apply to the instance of the principal's incapacity as would be effective in case of his death. To so rule would require the court to expand the scope of the statute beyond that which its language would admit. However, there are other reasons than analogy of insanity to death, which the statute deals with, which would direct a like result in this case.
The savings book issued to the account holder contains a specification of conditions governing the account. It provides, in pertinent part:
"Request for withdrawals shall be honored only upon satisfactory verification of account holders signatures and on all withdrawals this book should be presented; however, any payment made in good faith to any person producing the book, either before or after the death of the account holder, shall be a valid payment to discharge the Association in the absence of prior receipt by the Association of written notice that the book has * * * fallen into the hands of unauthorized person or persons."
Also:
"The receipt or acquittance of * * * either account holder of a joint account payable upon the signature of either * * shall be a valid and sufficient release and discharge of the Association for any such payment."
These provisions seem to contemplate that payments may be validly made to any person who seeks same if there is presented a properly executed authorization bearing the signature of one of the joint account holders and also such person shall then produce the savings book, provided such payment is made in good faith and without the Association having received written notice that the book had fallen into unauthorized hands. Mrs. Horton presented a document bearing the signature of one of the account holders specifically empowering the withdrawal and also she presented the savings book. In the absence of knowledge of any circumstance which would put the Association on notice of any irregularity or infirmity in the power of attorney, there was demonstrated good faith on its part in carrying out the terms of its contract. This is especially so when the savings book is produced without there having been any prior written notice that such book was in unauthorized possession of Mrs. Horton.
The appellant contends that First Federal does not occupy the status of an innocent *341 party without notice of the incompetency but that it had constructive or implied notice under Section 394.22(10) (a), Florida Statutes, F.S.A., which provides:
"After the judgment adjudicating a person to be mentally incompetent is filed in the office of the county judge, such person shall be presumed to be incapable, for the duration of such incompetency, of managing his own affairs or of making any gift, contract, or any instrument in writing which is binding on him or his estate. The filing of said judgment shall be notice of such incapacity."
The statute is not to be given an application beyond that which its terms would reasonably embrace. The filing in the County Judge's office of such an order adjudging incompetency is notice of the incapacity of the incompetent to make a gift, contract, or written instrument "which is binding on him or his estate". The effect is to render any such gift or contractual document voidable as to the incompetent or his estate but not void so far as third parties are concerned. Except when the incompetent or someone lawfully acting in his behalf or in behalf of his estate shall seek to avoid the consequences of written engagements made by the incompetent which would otherwise be valid, they will be given full recognition and enforcement. The statute and the constructive notice provided thereby is not available to aid the plaintiff in this case, as she is not acting in behalf of the estate of Mr. Horton.
It is also asserted that the record of the order adjudging Mr. Horton incompetent constitutes a means of knowledge of that fact by First Federal and that such means carries with it a duty to use it. Sapp v. Warner, 1932, 105 Fla. 245, 141 So. 124, 143 So. 648, 144 So. 481, and First Federal Savings and Loan Ass'n of Miami v. Fisher, Fla. 1952, 60 So.2d 496, are cited in support. These cases are not in point in this case. Because of the contractual arrangements between First Federal and its account holders with regard to withdrawals of account moneys there was no duty on First Federal to search the County Judge's records to become advised of the competency status of such persons.
It is concluded that by virtue of these contract provisions, the payment made by First Federal to Mrs. Horton is a proper payment and a discharge of its obligations to the account holders. It is unnecessary to determine whether the same or a different result would be reached in the absence of the mentioned terms of the contract involved.
The judgment appealed from is found free from error.
Affirmed.
WALDEN, C.J., and ANDREWS, J., concur.