MARLOWE KING, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15350-84.        Filed December 2, 1986.

*Stephen Lewis, Bradford Ferguson, Frederick Hickman, Peter Freeman,* and *Michael Clark,* for the petitioner.
*Alan M. Jacobson,* for the respondent.

OPINION

CLAPP, *Judge*: This case is before the Court on petitioner's motion for partial summary judgment filed August 29, 1986, pursuant to Rule 121.[1]

Respondent determined deficiencies in petitioner's Federal income taxes as follows:

| Year | Deficiency |
| --- | --- |
| 1979 | $19,989.34 |
| 1980 | 1,525,852.76 |

The issues to which this motion relates are (1) whether petitioner's loss on the dispositions in 1980 of positions constituting part of a gold commodity futures straddle are deductible in 1980, and (2) whether gain on the sale of gold bars in 1980 qualifies as long-term capital gain.

Petitioner has moved for summary judgment as to both of these issues, alleging that there are no genuine issues of fact and that a holding in favor of petitioner is appropriate. Rule 121(a) provides, in part, that either party may move for a summary adjudication in his favor upon all or any part of the legal issues in controversy. Rule 121(d) provides, in part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or filed therewith. The Court may permit affidavits to be supplemented or opposed by answers to interrogatories, depositions, further affidavits, or other acceptable materials, to the extent that other applicable conditions in these Rules are satisfied for utilizing such procedures.

Rule 121(d) further provides that:

When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, a decision, if appropriate, may be entered against him.

Petitioner has provided us with a sworn affidavit describing the transactions in question. Respondent has conceded some of the facts contained in petitioner's affidavit. For purposes of clarity, we will deal separately with each of the issues upon which petitioner requests that we grant summary judgment.

### Straddle Losses

Petitioner is a registered member of the Chicago Mercantile Exchange (CME) and its division, the International Monetary Market (IMM). The CME is a domestic board of trade designated as a contract market by the Commodity Futures Trading Commission. From 1950 to the present, petitioner has actively and regularly traded commodities and regulated futures contracts and has derived most of his income from such trading.

From June 23, 1980, through March 11, 1981, petitioner established and disposed of positions in gold futures contracts. These positions were held in the form of straddles,[2] and are set forth in attached Appendix A. All of petitioner's 1980-81 gold straddle positions were disposed of by March 11, 1981. The trades in dispute are as follows:

1. The purchase on July 2, 1980, of 66 June 1981 gold futures contracts which offset 66 short June 1981 gold contracts and which generated a loss of $550,900.

---

[2] A description of commodities future trading by the use of straddles can be found in *Miller v. Commissioner*, 84 T.C. 827, 828-830 (1985), on appeal (10th Cir., Nov. 20, 1985); and *Smith v. Commissioner*, 78 T.C. 350, 354-357 (1982).

2. The purchase on July 3, 1980, of 30 December 1980 gold contracts, which offset 30 short December 1980 gold contracts and which resulted in a profit of $16,150, and the purchase on July 3, 1980, of 30 December 1981 gold contracts which offset 30 short December 1981 gold contracts and which generated a profit of $17,100.

3. The purchase on July 14, 1980, of 60 June 1981 gold contracts which offset 60 short June 1981 gold contracts and which generated a loss of $372,000.

4. The purchase on September 10, 1980, of 33 December 1980 gold contracts which offset 33 short December 1980 gold contracts and the purchase on September 10, 1980 of 33 December 1981 gold contracts which offset 33 short December 1981 gold contracts, which purchases generated a combined loss of $306,390.

5. The sale on December 29, 1980, of 80 March 1981 gold contracts, which offset 80 long March 1981 gold contracts and which generated a loss of $256,860.

On his Federal income tax return for 1980, petitioner deducted $1,452,900 in short-term capital losses from the above gold straddle transactions.

In his statutory notice of deficiency, respondent disallowed the claimed losses for 1980. The reasons stated for the disallowance of the losses were as follows:

The transactions at issue were either shams or devoid of the substance necessary for recognition for federal income tax purposes. Recognition of the claimed loss would distort the economic reality of the entire transaction. No genuine loss occurred, the alleged loss was but one step in a series of integrated transactions, and the entire transaction lacked economic reality.

In his response to petitioner's motion for summary judgment, respondent sets out three arguments for summary judgment being inappropriate with respect to petitioner's claimed losses:

1. Petitioner has failed to address the threshold issue of whether the transactions at issue were shams;

2. Petitioner has failed to show that he is entitled to the presumption under section 108(b) of the Tax Reform Act of 1984 and Temp. Treas. Reg. Sec. 1.165-13T; and

3. Even if petitioner were entitled to the presumption, a trial would nevertheless be required to resolve the "for profit" issue which is inherently factual.

By sworn affidavit, petitioner provided us with detailed information concerning his background, his CME and IMM trading activities, and his trading strategies, as well as

general information on the trading of gold futures contracts by the use of straddles. Clearly, petitioner's description of his trading activity fully addresses any sham allegations concerning whether the trades occurred. Further, in considering respondent's allegation of sham, we cannot fail to note the regulated nature of the exchange upon which these trades were made.[3] Respondent, however, has failed to allege any facts to support his general allegation of sham. Our first issue for decision is therefore whether, under such circumstances, respondent may use a bare assertion of sham as a defense to a motion for summary judgment.

Rule 121(d) states that when a motion for summary judgment has been made and supported as required by our Rules, "an adverse party may not rest upon the mere allegations or denials of his pleadings" and that such a party must "set forth *specific* facts showing that there is a genuine issue for trial." (Emphasis added.) Although petitioner has included in his affidavit detailed facts supporting the bona fide nature of his trading in gold contracts, respondent failed to allege or support any facts tending to demonstrate that the transactions in question were shams. Under these circumstances, respondent has not shown that there is a genuine issue of sham for trial and, therefore, has not established an adequate defense to petitioner's motion for summary judgment. To hold otherwise would be to render the requirements of Rule 121(d) meaningless.

The second and third arguments which respondent has made against the granting of petitioner's motion for summary judgment with respect to the losses are both impacted by the Tax Reform Act of 1986. Section 108 of the Tax Reform Act of 1984 (Division A of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 630) (Section 108) provided, in part:

SEC. 108. TREATMENT OF CERTAIN LOSSES ON STRADDLES ENTERED INTO BEFORE EFFECTIVE DATE OF ECONOMIC RECOVERY TAX ACT OF 1981.

(a) GENERAL RULE.—For purposes of the Internal Revenue Code of 1954, in the case of any disposition of 1 or more positions—

(1) which are entered into before 1982 and form part of a straddle, and

---

[3]See *Perlin v. Commissioner*, 86 T.C. 388 (1986); cf. *Glass v. Commissioner*, 87 T.C. 1087 (1986).

(2) to which the amendments made by title V of such Act do not apply,

any loss from such disposition shall be allowed for the taxable year of the disposition if such position is part of a transaction entered into for profit.

(b) PRESUMPTION THAT TRANSACTION ENTERED INTO FOR PROFIT.—For purposes of subsection (a), any position held by a commodities dealer or any person regularly engaged in investing in regulated futures contracts shall be rebuttably presumed to be part of a transaction entered into for profit.

Section 1808(d) of the Tax Reform Act of 1986 made technical corrections to section 108, in part, as follows:

(d) SECTION 108.—Section 108 of the Tax Reform Act of 1984 is amended—
(1) by striking out "if such position is part of a transaction entered into for profit" and inserting in lieu thereof "if such loss is incurred in a trade or business, or if such loss is incurred in a transaction entered into for profit though not connected with a trade or business,"
(2) by striking out subsection (b) and inserting in lieu thereof the following:
"(b) LOSS INCURRED IN A TRADE OR BUSINESS.—For purposes of subsection (a), any loss incurred by a commodities dealer in the trading of commodities shall be treated as a loss incurred in a trade or business."

Respondent's remaining arguments against petitioner's motion for summary judgment are that, (1) petitioner must establish at trial that he regularly traded in gold in order for the provisions of section 108(b) to apply, and (2) even if petitioner was a dealer in gold, he would only be rebuttably presumed to have incurred the losses in a transaction entered into for profit, and at trial, it must be determined whether such a profit motive actually existed. Respondent has conceded that petitioner was a dealer in commodities within the meaning of section 108(f). We believe that the technical corrections to section 108 make it clear that these arguments are not valid defenses to petitioner's motion for summary judgment.

The amendments to section 108 now provide that any loss incurred by a commodities dealer in the trading of commodities is deductible without regard to the existence of a profit motive.[4] This is a per se rule and no longer a rebuttable

[4]The legislative history of the provision states, in part, that "The subsection (b) treatment is only for purposes of subsection (a), and no inference should be drawn that a loss is incurred in a trade or business for any other purpose, such as for purposes of section 162, 163(d) or 172." H. Rept. 99-426, at 911 (1985).

presumption. As respondent has conceded that petitioner is a commodities dealer, the provisions of section 108 have been satisfied.[5]

Respondent nevertheless argues that petitioner must establish that the transactions in question were part of his regular trading activities in order for the provisions of section 108(b) to be applicable. See sec. 1.165-13T, Q & A-6, Temporary Income Tax Regs., 49 Fed. Reg. 33445 (Aug. 23, 1984).[6] The Conference Committee statement of managers,[7] however, states with respect to the amendments to section 108(b) that,

If a person qualifies as a commodities dealer, the subsection (b) treatment applies with respect to any position disposed of by such person. It would, for example, apply without regard to whether the position was in a commodity regularly traded by the person, whether it was traded on an exchange on which the dealer was a member, or whether an identical position was re-established on the same trading day or subsequently. * * * [Conf. Rept. 99-841, at II-845.]

The Conference report makes clear that the applicability of subsection (b) treatment does not turn on whether the transactions in question were part of petitioner's regular trading activities. Therefore, section 108(b) is applicable to the transactions in question and petitioner's loss on his straddle transactions in 1980 is allowable.

Petitioner has fully supported his claim that no genuine issue for trial exists with respect to his 1980 straddle losses. Respondent has failed to allege any specific facts which would constitute genuine issues for trial. Accordingly, petitioner's motion for summary judgment will be granted with respect to this issue.[8]

### Gains From the Sale of Gold

In satisfaction of 100 long gold futures contracts that called for delivery in December 1978, petitioner received

---

[5]Respondent has not argued that the requirements of sec. 108(a)(1) and (2) are not satisfied. The record clearly shows that they have been satisfied.

[6]See also *Perlin v. Commissioner, supra* at 422-423.

[7]When interpreting a statute, the Court may look to legislative history for interpretive assistance. *Perlin v. Commissioner, supra* at 419; *Miller v. Commissioner, supra* at 838 n. 20.

[8]The per se rule of sec. 108(b) would not preclude us from finding for respondent in another case. The legislative history of the provision makes clear that it was not intended to apply "where the trades were fictitious, prearranged, or otherwise in violation of the rules of the exchange in which the dealer is a member." H. Rept. 99-426, at 911 (1985). See also *DeMartino v. Commissioner*, T.C. Memo. 1986-263.

warehouse receipts representing 10,000 ounces of gold on December 1, 1978. Petitioner paid a $1,929,165.17 delivery price on December 4, 1978.

From October 4, 1978, through May 5, 1980, petitioner established and disposed of straddle positions in gold futures contracts as shown in Appendix B. Throughout the period from December 1, 1978, through May 1, 1980, petitioner continually bought and sold gold futures contracts but generally maintained a balanced position taking into account the delivered gold commodity.

Petitioner's position on May 1, 1980, was short 100 May 1980 gold futures contracts and long the delivered gold. On May 2, 1980, petitioner delivered the warehouse receipts to the Chicago Mercantile Exchange Clearing House in satisfaction of the petitioner's delivery obligations under the 100 short May 1980 gold contracts acquired on May 1, 1980. This delivery closed out his positions in the gold contracts. On petitioner's 1980 Federal income tax return he reported a $3,244,712 long-term capital gain from the May 2, 1980, delivery of the gold bars to close the May 1, 1980, short position.

Respondent determined in his notice of deficiency that this gain should be treated as short-term capital gain pursuant to section 1233(b).[9] Respondent maintains this position and objects to petitioner's motion for summary judgment as it relates to this issue.

Section 1233(b) provides, in relevant part:

SEC. 1233(b). SHORT-TERM GAINS AND HOLDING PERIODS.—If gain or loss from a short sale is considered as gain or loss from the sale or exchange of a capital asset under subsection (a) and if on the date of such short sale substantially identical property has been held by the taxpayer for not more than 1 year (determined without regard to the effect, under paragraph (2) of this subsection, of such short sale on the holding period), or if substantially identical property is acquired by the taxpayer after such short sale and on or before the date of the closing thereof—

(1) any gain on the closing of such short sale shall be considered as a gain on the sale or exchange of a capital asset held for not more than 1 year (notwithstanding the period of time any property used to close such short sale has been held); * * *

---

[9]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue.

Respondent asserts that because petitioner maintained short positions in gold futures contracts which offset his position in the delivered gold throughout the time he held the delivered gold, section 1233(b) is applicable and provides that petitioner's gain is to be treated as short-term capital gain.

Petitioner asserts that the provisions of section 1233 are not applicable to this transaction because physical commodities, such as were used to close the short sale in this case, are not within the scope of the section. Section 1233(e)(2)(A) provides:

SEC. 1233 (e). RULES FOR APPLICATION OF SECTION.—

*   *   *   *   *   *   *

(2) For purposes of subsections (b) and (d)—

(A) the term "property" includes only stocks and securities (including stocks and securities dealt with on a "when issued" basis), and commodity futures, which are capital assets in the hands of the taxpayer * * *

The parties agree that the commodity in this case, i.e., the gold, was a capital asset in the hands of petitioner, but disagree as to whether this definition of property can be read to include commodities, in addition to commodity futures.

We note initially that the use of the words "includes only" unambiguously restricts the application of the section to property which is enumerated in the provision. Respondent, nevertheless, argues that physical commodities should be found to be within the scope of the provision and that the legislative history of the predecessor of section 1233 supports such an interpretation. Assuming that an examination of the legislative history is appropriate in these circumstances, we find that it does not support respondent's interpretation of the provision.

The legislative history to which respondent directs our attention is the House Committee Report on the predecessor to section 1233. The report stated, in part:

At the present time it is possible for an investor in stocks to realize a capital gain in less than 6 months and obtain long-term capital gain tax treatment on it by making a short sale which will assure his gain on his original investment, and then defer closing out the short sale until he has held his original stock investment for more than 6 months. * * *

* * * * * * *

Much the same device may be used by a taxpayer to avoid tax on his profits from speculation in commodity futures. This device is not used, however, by businessmen who deal in commodity futures to offset regular business dealings in actual commodities, since they are not affected by the long-term and short-term capital gain provisions. * * *
[H. Rept. 2319, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 380, 421.]

Respondent asserts that the sale here in issue was of a type which section 1233 was intended to cover and that this is demonstrated by the above portion of the legislative history. The cited language, however, read in conjunction with the use of the phrase "includes only" in the legislation, seems more likely to be an explanation of why Congress chose not to include actual commodities within the scope of the provision. Congress was apparently of the belief that actual commodities would only be dealt in by those who were regularly in the business of dealing in commodity futures and who would not be affected by the capital gain provisions. At the very least, this language in the legislative history demonstrates Congress' awareness that actual commodities could be used to offset a short sale in the same manner as commodity futures. Congress, nevertheless, did not choose to list commodities as a type of property to which section 1233(b) and (d) should apply.

We also take note of the provisions of section 1234, which deal with the sale or exchange of, or the failure to exercise, an option to buy or sell property. This section defines the scope of the property to which it applies as follows:

SEC. 1234(b). TREATMENT OF GRANTOR OF OPTION IN THE CASE OF STOCK, SECURITIES, OR COMMODITIES.—

* * * * * * *

(2) DEFINITIONS.—For purposes of this subsection—

* * * * * * *

(B) PROPERTY.—The term "property" means stocks and securities (including stocks and securities dealt with on a "when issued" basis), *commodities, and commodity futures.* [Emphasis added.]

Here, Congress has likewise enumerated a list of types of properties which includes commodity futures. The designation of both commodities and commodity futures, however, tends to demonstrate that Congress does not consider the terms to be synonymous.

While respondent's policy argument as to why actual commodities should be treated as being within the scope of section 1233 may have some merit, we do not believe that the intended scope of the section encompasses actual commodities. As the application of section 1233 is the only basis respondent has put forward for treating petitioner's gain as short-term rather than long-term capital gain, we will grant petitioner's motion for partial summary judgment as to this issue as well.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

STERRETT, SIMPSON, CHABOT, NIMS, PARKER, WHITAKER, KÖRNER, HAMBLEN, COHEN, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, and WELLS, *JJ.*, agree with this opinion.

SHIELDS, *J.*, did not participate in the consideration of this opinion.

## APPENDIX A
## GOLD STRADDLE—1980-1981

| | CONTRACTS—LONG OR (SHORT) | | | | | Current balance long (short) | Realized gain (loss) | CUMULATIVE | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Dec. 1980 | Mar. 1981 | June 1981 | Sept. 1981 | Dec. 1981 | | | Realized gain (loss) | Unrealized gain (loss) in account | Net equity in account |
| **1. 6/23/80** | | | | | | | | | | |
| Trade | | 75 | (150) | 75 | | | | | | |
| Position | | 75 | (150) | 75 | | 150 (150) | --- | --- | ($1,500) | ($1,500) |
| **2. 6/25/80** | | | | | | | | | | |
| Trade | | 6 | | | | | | | | |
| Position | | 81 | (150) | 75 | | 156 (150) | --- | --- | (5,310) | (5,310) |
| **3. 6/27/80** | | | | | | | | | | |
| Trade | | 6 | --- | --- | | | | | | |
| Position | | 87 | (150) | 75 | | 162 (150) | --- | --- | 22,730 | 22,730 |
| **4. 6/30/80** | | | | | | | | | | |
| Trade | | (3) | --- | --- | | | | | | |
| Position | | 84 | (150) | 75 | | 159 (150) | ($250) | ($250) | 16,440 | 16,190 |
| **5. 7/1/80** | | | | | | | | | | |
| Trade | | --- | (2) | --- | | | | | | |
| Position | | 84 | (152) | 75 | | 159 (152) | --- | (250) | 37,920 | 37,670 |
| **6. 7/2/80** | | | | | | | | | | |
| Trade | (33) | --- | 66 | --- | (33) | | | | | |
| Position | (33) | 84 | (86) | 75 | (33) | 159 (152) | (550,900) | (551,150) | 579,950 | 28,800 |
| **7. 7/3/80** | | | | | | | | | | |
| Trade | 30 | --- | (62) | --- | 30 | | | | | |
| Position | (3) | 84 | (148) | 75 | (3) | 159 (154) | 33,250 | (517,900) | 552,790 | 34,890 |
| **8. 7/14/80** | | | | | | | | | | |
| Trade | (30) | --- | 60 | --- | (30) | | | | | |
| Position | (33) | 84 | (88) | 75 | (33) | 159 (154) | (372,000) | (889,900) | 907,840 | 17,940 |
| **9. 7/16/80** | | | | | | | | | | |
| Trade | --- | --- | (2) | --- | --- | | | | | |
| Position | (33) | 84 | (90) | 75 | (33) | 159 (156) | --- | (889,900) | 898,600 | 8,700 |

## GOLD STRADDLE—1980-1981

### (continued)

| | CONTRACTS—LONG OR (SHORT) | | | | | Current balance long (short) | Realized gain (loss) | CUMULATIVE | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Dec. 1980 | Mar. 1981 | June 1981 | Sept. 1981 | Dec. 1981 | | | Realized gain (loss) | Unrealized gain (loss) in account | Net equity in account |
| **10. 7/25/80** Trade | | (3) | | | | | $450 | | | |
| Position | (33) | 81 | (90) | 75 | (33) | 159 (156) | | ($889,450) | $902,680 | $13,230 |
| **11. 8/13/80** Trade | (20) | | | | | | --- | | | |
| Position | (35) | 81 | (90) | 75 | (33) | 159 (158) | | (889,450) | 904,930 | 15,480 |
| **12. 8/21/80** Trade | (2) | | | | | | --- | | | |
| Position | (37) | 81 | (90) | 75 | (33) | 156 (160) | | (889,450) | 903,350 | 13,900 |
| **13. 8/25/80** Trade | 2 | | | | | | 920 | | | |
| Position | (35) | 81 | (90) | 75 | (33) | 156 (158) | | (888,530) | 902,880 | 14,350 |
| **14. 9/2/80** Trade | 2 | | | | | | (6,340) | | | |
| Position | (33) | 81 | (90) | 75 | (33) | 156 (156) | | (894,870) | 906,070 | 11,200 |
| **15. 9/10/80** Trade | 33 | | (66) | | | | (306,390) | | | |
| Position | | 81 | (156) | 75 | 33 | 156 (156) | | (1,201,260) | 1,209,070 | 7,810 |
| **16. 12/29/80** Trade | | (80) | | 80 | | | (256,860) | | | |
| Position | | 1 | (156) | 155 | | 156 (156) | | (1,458,120) | 1,459,780 | 1,660 |
| **17. 1/5/81** Trade | | (1) | | | | | (6,290) | | | |
| Position | | | (156) | 155 | | 156 (156) | | (1,464,410) | 1,461,780 | (2,630) |
| **18. 1/4/81** Trade | | | 1 | | | | 5,850 | | | |
| Position | | | (155) | 155 | | 155 (155) | | (1,458,560) | 1,441,030 | (17,530) |

GOLD STRADDLE—1980-1981
(continued)

| | CONTRACTS—LONG OR (SHORT) | | | | | Current balance long (short) | Realized gain (loss) | CUMULATIVE | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Dec. 1980 | Mar. 1981 | June 1981 | Sept. 1981 | Dec. 1981 | | | Realized gain (loss) | Unrealized gain (loss) in account | Net equity in account |
| 19. 2/5/81 Trade | -- | (1) | -- | -- | -- | | -- | | | |
| Position | -- | (1) | (155) | .5 | -- | 155 (156) | | ($1,458,560) | $1,385,690 | ($72,870) |
| 20. 2/13/81 Trade | -- | 1 | -- | -- | -- | | (370) | | | |
| Position | -- | -- | (155) | 155 | -- | 155 (155) | | (1,458,930) | 1,394,530 | (64,400) |
| 21. 2/24/81 Trade | -- | (1) | -- | -- | -- | | -- | | | |
| Position | -- | (1) | 155 | (155) | -- | 155 (156) | | (1,458,930) | 1,400,280 | (58,650) |
| 22. 2/26/81 Trade | | 1 | -- | -- | -- | | 720 | | | |
| Position | | -- | 155 | (155) | -- | 155 (155) | | (1,458,210) | 1,391,430 | (66,780) |
| 23. 3/4/81 Trade | | -- | -- | -- | (1) | | -- | | | |
| Position | | -- | 155 | (155) | (1) | 155 (156) | | (1,458,210) | 1,349,741 | (108,470) |
| 24. 3/6/81 Trade | | -- | -- | -- | 1 | | (600) | | | |
| Position | | -- | 155 | (155) | -- | 155 (155) | | (1,458,810) | 1,357,330 | (101,480) |
| 25. 3/11/81 Trade | | -- | (155) | 155 | -- | | 1,355,780 | | | |
| Position | | -- | -- | -- | -- | -- | | (103,030) | -- | -- |

## APPENDIX B

## GOLD CASH AND CARRY STRADDLE—1978-1980

| | CONTRACTS—LONG OR (SHORT) | | | | | | Physical gold | Current balance long (short) | Realized gain (loss) per return | Cumulative realized gain (loss) per return |
|---|---|---|---|---|---|---|---|---|---|---|
| | Dec. 1978 | Mar. 1979 | June 1979 | Sept. 1979 | Dec. 1979 | Mar. 1980 | | | | |
| 1. 10/4/78 Position | 3 | | | | | | | 3  --- | --- | --- |
| 2. 10/6/78 Trade | --- | 2 | | | | | | | | |
|    Position | 3 | 2 | | | | | | 5  --- | | |
| 3. 10/19/78 Trade | --- | 3 | | | | | | | | |
|    Position | 3 | 5 | | | | | | 8  --- | | |
| 4. 10/26/78 Trade | (2) | 2 | | | | | | | | |
|    Position | --- | 7 | | | | | | 8  --- | | |
| 5. 10/27/78 Trade | (1) | --- | | | | | | | | |
|    Position | --- | 7 | | | | | | 8  --- | $2,840 | $2,840 |
| 6. 10/31/78 Trade | --- | --- | (7) | | | | | | | |
|    Position | --- | 7 | (7) | | | | | 7  --- | 1,490 | 4,330 |
| 7. 11/3/78 Trade | --- | 7/((7)) | --- | | | | | | | |
|    Position | --- | 7 | (7) | | | | | 7  7 | --- | 4,330 |
| 8. 11/13/78 Trade | 100 | (100) | --- | | | | | | | |
|    Position | 100 | (93) | (7) | | | | | 100  (100) | (9,600) | (5,270) |
| 9. 11/17/78 Trade | --- | --- | 150 | (300) | (150) | | | | (3,430) | (8,700) |
|    Position | 100 | (93) | 143 | (300) | 150 | | | 393  (393) | 32,720 | 24,020 |

GOLD CASH AND CARRY STRADDLE—1978-1980
(continued)

| | | CONTRACTS—LONG OR (SHORT) | | | | | | Physical gold | Current balance long (short) | Realized gain (loss) per return | Cumulative realized gain (loss) per return |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Dec. 1978 | Mar. 1979 | June 1979 | Sept. 1979 | Dec. 1979 | Mar. 1980 | | | | |
| 10. 12/1/78 | Trade | Deliv. | | | | | --- | | | | |
| | Position | --- | (93) | 143 | (300) | 150 | --- | 100/100 | 393 (393) | ($182,000) | ($157,980) |
| 11. 12/11/78 | Trade | | (150) | | 300 | | (150) | | | | |
| | Position | | (243) | 143 | --- | 150 | (150) | --/100 | 393 (393) | (255,000) | (412,980) |
| 12. 12/27/78 | Trade | | 36/(36) | | | | | | | | |
| | Position | | (243) | 143 | --- | 150 | (150) | --/100 | 393 (393) | (52,920) | (465,900) |
| 13. 12/28/78 | Trade | | 164/(14) | | (150) | | | | | | |
| | Position | | (93) | 143 | (150) | 150 | (150) | --/100 | 393 (393) | (233,860) | (699,760) |
| 14. 12/29/78 | Trade | | | 5 | | | | | | | |
| | Position | | (93) | 148 | (150) | 150 | (150) | --/100 | 398 (393) | --- | (699,760) |
| 15. 1/2/79 | Trade | | | (5) | | | | | | | |
| | Position | | (93) | 143 | (150) | 150 | (150) | --/100 | 393 (393) | (2,050) | (701,810) |
| 16. 1/4/79 | Trade | | | | | 2 | | | | | |
| | Position | | (93) | 143 | (150) | 152 | (150) | --/100 | 395 (393) | --- | (701,810) |
| 17. 1/10/79 | Trade | | | | | 2 | | | | | |
| | Position | | 93 | 143 | (150) | 154 | (150) | --/100 | 397 (393) | --- | (701,810) |

GOLD CASH AND CARRY STRADDLE—1978-1980
(continued)

| | CONTRACTS—LONG OR (SHORT) | | | | | | Physical gold | Current balance long (short) | Realized gain (Loss) per return | Cumulative realized gain (loss) per return |
|---|---|---|---|---|---|---|---|---|---|---|
| | Mar. 1979 | June 1979 | Sept. 1979 | Dec. 1979 | Mar. 1980 | June 1980 | | | | |
| 18. 1/12/79 | | | | | | | | | | |
| Trade | --:-- | | | 2 | | | --:-- | | --:-- | |
| Position | (93) | 143 | (150) | 156 | (150) | | 100 | 399 (393) | | ($701,810) |
| 19. 1/18/79 | | | | | | | | | | |
| Trade | --:-- | | | (4) | | | --:-- | | $3,480 | |
| Position | (93) | 143 | (150) | 152 | (150) | | 100 | 395 (393) | | (698,330) |
| 20. 1/19/79 | | | | | | | | | | |
| Trade | --:-- | | | (2) | | | --:-- | | 2,970 | |
| Position | (93) | 143 | (150) | 150 | (150) | | 100 | 393 (393) | | (695,360) |
| 21. 1/26/79 | | | | | | | | | | |
| Trade | --:-- | | | 1 | | | --:-- | | --:-- | |
| Position | (93) | 143 | (150) | 151 | (150) | | 100 | 394 (393) | | (695,360) |
| 22. 2/1/79 | | | | | | | | | | |
| Trade | 46 | | (46) | | | | --:-- | | (64,900) | |
| Position | (47) | 143 | (196) | 151 | (150) | | 100 | 394 (393) | | (760,260) |
| 23. 2/5/79 | | | | | | | | | | |
| Trade | 30 | | (30) | | | | --:-- | | (52,950) | |
| Position | (17) | 143 | (226) | 151 | (150) | | 100 | 394 (393) | | (813,210) |
| 24. 2/9/79 | | | | | | | | | | |
| Trade | --:-- | | | 12 | | | --:-- | | --:-- | |
| Position | (17) | 143 | (226) | 163 | (150) | | 100 | 406 (393) | | (813,210) |
| 25. 2/12/79 | | | | | | | | | | |
| Trade | 10 | | (10) | | | | --:-- | | (18,890) | |
| Position | (7) | 143 | (236) | 163 | (150) | | 100 | 406 (393) | | (832,100) |
| 26. 2/15/79 | | | | | | | | | | |
| Trade | 7 | | (7) | | | | --:-- | | (14,570) | |
| Position | --:-- | 143 | (243) | 163 | (150) | | 100 | 406 (393) | | (846,670) |

## GOLD CASH AND CARRY STRADDLE—1979-1980
### (continued)

| | CONTRACTS—LONG OR (SHORT) | | | | | | Physical gold | Current balance long (short) | Realized gain (loss) per return | Cumulative realized gain (loss) per return |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Mar. 1979 | June 1979 | Sept. 1979 | Dec. 1979 | Mar. 1980 | June 1980 | | | | |
| **27. 2/20/79** Trade | —/— | | | 7 | | | — | | | |
| Position | | 143 | (243) | 170 | (150) | | 100 | 413 (393) | --- | ($846,670) |
| **28. 4/24/79** Trade | | — | — | — | (10) | | — | | | |
| Position | | 143 | (243) | 170 | (160) | | 100 | 413 (403) | --- | (846,670) |
| **29. 5/23/79** Trade | | (148) | 143 | (150) | 150 | | — | | | |
| Position | | — | (100) | 20 | (10) | | 100 | 120 (110) | $431,230 | (415,440) |
| **30. 6/26/79** Trade | | | — | — | (10) | | — | | | |
| Position | | | (100) | 20 | (20) | | 100 | 120 (120) | --- | (415,440) |
| **31. 7/13/79** Trade | | | — | (20) | 20 | | — | | | |
| Position | | | (100) | — | — | | 100 | 100 (100) | 15,490 | (399,950) |
| **32. 7/17/79** Trade | | | 100 | — | (100) | | — | | | |
| Position | | | — | — | (100) | | 100 | 100 (100) | (515,240) | (915,190) |
| **33. 8/14/79** Trade | | | — | 9/(9) | — | | — | | | |
| Position | | | — | — | (100) | | 100 | 100 (100) | (9,540) | (924,730) |
| **34. 8/30/79** Trade | | | | | (65) | | — | | | |
| Position | | | | | (165) | | 100 | 100 (165) | --- | (924,730) |

## GOLD CASH AND CARRY STRADDLE—1979-1980
### (continued)

CONTRACTS—LONG OR (SHORT)

| | Dec. 1979 | Mar. 1980 | May 1980 | June 1980 | Sept. 1980 | Dec. 1980 | Mar. 1981 | June 1981 | Physical gold | Current balance long (short) | Realized gain (loss) per return | Cumulative realized gain (loss) per return |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| **35. 9/4/79** | | | | | | | | | | | | |
| Trade | | 65 | | | | | | | -- | | | |
| Position | | (100) | | | | | | | 100 | 100 (100) | ($26,650) | ($951,380) |
| **36. 9/20/79** | | | | | | | | | | | | |
| Trade | 1 | -- | | | | | | | -- | | | |
| Position | 1 | (100) | | | | | | | 100 | 101 (100) | - - - | (951,380) |
| **37. 9/27/79** | | | | | | | | | | | | |
| Trade | (1) | | | | | | | | -- | | | |
| Position | -- | (100) | | | | | | | 100 | 100 (100) | 2,120 | (949,260) |
| **38. 10/15/79** | | | | | | | | | | | | |
| Trade | | (1) | | | | | | | -- | | | |
| Position | | (101) | | | | | | | 100 | 100 (101) | - - - | (494,260) |
| **39/ 10/16/79** | | | | | | | | | | | | |
| Trade | | 1 | | | | | | | -- | | | |
| Position | | (100) | | | | | | | 100 | 100 (100) | 2,000 | (947,260) |
| **40. 10/17/79** | | | | | | | | | | | | |
| Trade | | 1/(1) | | | | | | | -- | | | |
| Position | | (100) | | | | | | | 100 | 100 (100) | 900 | (946,360) |
| **41. 11/29/79** | | | | | | | | | | | | |
| Trade | | 100 | | | | | (100) | | -- | | | |
| Position | | -- | | | | | (100) | | 100 | 100 (100) | (1,110,000) | (2,056,360) |
| **42. 12/21/79** | | | | | | | | | | | | |
| Trade | | | | | | | 100 | (100) | -- | | | |
| Position | | | | | | | -- | (100) | 100 | 100 (100) | (766,500) | (2,822,860) |
| **43. 1/17/80** | | | | | | | | | | | | |
| Trade | | -- | | | 1 | (1) | | | -- | | | |
| Position | | -- | | | 1 | (1) | -- | (100) | 100 | 101 (101) | - - - | (2,822,860) |

GOLD CASH AND CARRY STRADDLE—1979-1980
(continued)

| | CONTRACTS—LONG OR (SHORT) | | | | | | | | Physical gold | Current balance long (short) | Realized gain (loss) per return | Cumulative realized gain (loss) per return |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Dec. 1979 | Mar. 1980 | May 1980 | June 1980 | Sept. 1980 | Dec. 1980 | Mar. 1981 | June 1981 | | | | |
| **44. 3/24/80** | | | | | | | | | | | | |
| Trade | --/-- | --/-- | | | | | | | | | --- | ($2,822,860) |
| Position | | | | (4)/(4) | --/1 | --/(1) | --/(100) | --/100 | --/100 | 101 (105) | | |
| **45. 3/25/80** | | | | | | | | | | | | |
| Trade | --/-- | --/-- | | | | | | | | | $3,900 | (2,818,960) |
| Position | | | | 4/-- | --/1 | --/(1) | --/(100) | --/(100) | --/100 | 101 (101) | | |
| **46. 4/18/80** | | | | | | | | | | | | |
| Trade | | | | | | | | | | | --- | (2,818,960) |
| Position | | | | (1)/(1) | --/1 | --/(1) | --/-- | --/(100) | --/100 | 101 (102) | | |
| **47. 4/21/80** | | | | | | | | | | | | |
| Trade | | | | 1/-- | | | | | | | 1,850 | (2,817,110) |
| Position | | | | --/-- | --/1 | --/(1) | --/-- | --/(100) | --/100 | 101 (101) | | |
| **48. 5/1/80** | | | | | | | | | | | | |
| Trade | | | (100)/(100) | | | | | | | | 215,000 | (2,602,110) |
| Position | | | --/-- | --/-- | --/1 | --/(1) | --/-- | --/100 | --/100 | 101 (101) | | |
| **49. 5/2/80** | | | | | | | | | | | | |
| Trade | | | Deliv. | | | | | | Deliv. | | 2,894,712 | 292,602 |
| Position | | | --/-- | --/-- | --/1 | --/(1) | --/-- | --/-- | | 1 (1) | | |
| **50. 5/5/80** | | | | | | | | | | | | |
| Trade | | | | --/-- | (1)/-- | 1/-- | --/-- | --/-- | | | 900 | 293,502 |
| Position | | | --/-- | --/-- | | | | | | --/--- | | |