T.C. Memo. 1997-58


UNITED STATES TAX COURT


THEODORE HALPER, INCOMPETENT, VALERIE HALPER AND
WAYNE HALPER, CO-PLENARY GUARDIANS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23378-94.                    Filed February 3, 1997.


        P signed a power of attorney (POA) in 1988 naming B as
his representative.  In April 1991, P was totally
incapacitated by a stroke.  B signed a Form 872 on Sept. 23,
1991, extending the statutory period of limitations (SPL)
for tax years 1985 and 1986, with a letter to R describing
the effects of P's stroke.  On Jan. 28, 1992, a Florida
court found P legally incapacitated and named co-plenary
guardians, neither of which was B.  In a letter dated
May 20, 1992, B advised R that P was not competent to
authorize agreement to settlement, and that B thus could not
sign a Form 870.  However, on Aug. 27, 1992, B nevertheless
did sign another Form 872 for 1985 and 1986 on behalf of P.
On Sept. 19, 1994, a notice of deficiency for 1984, 1985,
and 1986 was mailed to P.
        <u>Held</u>: The Form 872 signed in 1992 is ineffective to
extend the SPL, because the POA under which B acted was
revoked by P's incapacity and R had actual knowledge of the
incapacity.  <u>Held</u>, <u>further</u>, the SPL for 1984, 1985, and 1986

had expired when the notice was mailed, unless the underpayments of tax for those years were due to fraud.

Michael B. Axman, for petitioner.

Ladd C. Brown, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, Judge:  This case is before us on petitioner's motion for partial summary judgment.  The case involves tax years 1984, 1985, and 1986.  One of the issues is whether petitioner is liable for the addition to tax for fraud for each of those years. The parties agree that, absent fraud, the period of limitations for 1984 has expired.  The parties also agree that petitioner's Federal income tax returns for the taxable years 1985 and 1986 were filed on July 25, 1986, and June 12, 1987, respectively, and that, without a valid chain of extensions, the periods of limitations would have expired July 25, 1989, and June 12, 1990, respectively, unless the underpayments of tax for those years were due to fraud.

The specific issue presented is whether the Forms 872 (Consent to Extend the Time to Assess Tax), executed by petitioner's purported representative on September 23, 1991, and August 27, 1992, were effective to extend the periods of limitations.  That issue turns on whether respondent knew or had reason to know that petitioner was, in fact, incompetent and that

the power of attorney, signed by petitioner when he was competent, had thus been revoked by operation of law.

All section references are to the Internal Revenue Code as amended and in effect for the years in issue, unless otherwise indicated.                    FINDINGS OF FACT

When the petition in this case was filed, petitioner resided in North Miami Beach, Florida.

Petitioner and respondent timely executed agreements in writing pursuant to the provisions of section 6501(c)(4), extending the period for the assessment of tax due for 1985 and 1986 as follows:

| Form | Year(s) | Petitioner | Respondent | Extension Date |
|------|---------|-----------|-----------|----------------|
| 872 | 1985 | 03/13/89 | 03/16/89 | 12/31/89 |
| 872 | 1985 & 1986 | 09/12/89 | 09/15/89 | 12/31/90 |
| 872 | 1985 & 1986 | 10/01/90 | 10/10/90 | 12/31/91 |

The first two extensions were signed by both petitioner and his representative, Paul B. Bergman (Bergman). Bergman was named as petitioner's representative in a Form 2848 (Power of Attorney and Declaration of Representative), signed by petitioner on June 14, 1988. (The parties agree that Form 2848 is not a durable power of attorney.) The third extension was signed by petitioner only. The validity of the foregoing extensions is not in issue.

The parties agree that in April of 1991, while undergoing coronary bypass surgery, petitioner suffered a massive stroke, leaving him both physically and mentally incapacitated. After

the stroke, Bergman continued to act on behalf of petitioner vis-a-vis the Internal Revenue Service (IRS) under the apparent authority of the power of attorney executed by petitioner before his stroke.

On September 23, 1991, Bergman alone signed a Form 872 that purported to extend the period of limitations for both 1985 and 1986 to December 31, 1992. That form was accompanied by a letter from Bergman (first letter) to Andrew Rosenblatt (Agent Rosenblatt), the IRS agent assigned to petitioner's audit. The letter states:

> I am returning herewith the two copies of form 872, signed by me alone as Mr. Halper's representative. As I advised you, Mr. Halper suffered a stroke and as a result cannot speak and is paralyzed in half of his body.
>
> If you have any questions, please telephone me at my office.

Respondent signed the consent on October 2, 1991.

On January 28, 1992, the Probate Division of the Eleventh Judicial District in and for Dade County, Florida, determined petitioner to be "incapable of the care, custody, and management of his estate by reason of physical and/or mental infirmity". Valerie Harper (petitioner's wife) was named guardian of the person of petitioner, and Sidney Most was named guardian of the property of petitioner. On December 9, 1993, petitioner's wife and Wayne Halper were named co-plenary guardians of the property of petitioner. Petitioner's wife was (and still is) the only

guardian of the person of petitioner."  They did not give Bergman
a power of attorney.

In a second letter addressed to Agent Rosenblatt on May 20,
1992 (second letter), Bergman stated:

> Because Mr. Halper is presently not competent to
> authorize my agreement to the figures which you state
> represent sums owed to the IRS, I cannot sign the Form
> 870 [Waiver of Restrictions on Assessment and
> Collection of Deficiency in Tax and Acceptance of
> Overassessment] which you have enclosed.  As you may
> know, while he was competent, Mr. Halper believed that
> the assessed amounts were not accurate to the extent
> stated.

Although Bergman refused to sign the Form 870, 3 months later, on
August 27, 1992, he did sign a Form 872, purporting to extend the
statutory period of limitations for 1985 and 1986 to December 31,
1993.  That form was signed by respondent on August 31, 1992.

On November 16, 1992, a new power of attorney was signed by
Valerie Halper as guardian of Theodore Halper, authorizing Steven
M. Kwartin, Martin J. Nash, and Michael B. Axman as petitioner's
representatives.  A final Form 872 for 1985 and 1986 was signed
October 7, 1993, apparently by Mr. Axman, and by respondent on
October 15, 1993, extending the statutory period of limitations
for 1985 and 1986 to December 31, 1994.  That document is not in
issue.

The notice of deficiency setting forth respondent's
determination of petitioner's income tax liabilities for 1985 and

1986 was sent to petitioner by certified mail on September 19, 1994.

## OPINION

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. Kroh v. Commissioner, 98 T.C. 383, 390 (1992); Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). Summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Because the Court's granting of a motion for summary judgment decides against a party before trial, such a disposition should be cautiously invoked and used sparingly after carefully ascertaining that the moving party has met all the requirements for the granting of a summary judgment motion. Associated Press v. United States, 326 U.S. 1, 6 (1945); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982).

The Court will not resolve disagreements over relevant factual issues in a summary judgment proceeding. Espinoza v. Commissioner, supra at 416. The burden of proving that there is no genuine issue of material fact is on the moving party and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Kroh v. Commissioner, supra at 390. A fact is material if it "tends to resolve any of the issues that have been properly raised by the parties." 10A Wright et al., Federal Practice and Procedure, Civil 2d, sec. 2725, at 93 (2d ed. 1983). In this regard, the Court previously has denied motions for summary judgment where intent is a material issue in the case; such an inference of fact is to be drawn only at trial. Oakland Hills Country Club v. Commissioner, 74 T.C. 35, 40 (1980); Hoeme v. Commissioner, 63 T.C. 18, 20 (1974). The value of a trial with complete opportunity to view the demeanor of the parties and their evidence is obvious. Hoeme v. Commissioner, supra at 20.

Rule 121(d) provides, in pertinent part, as follows:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, then a decision, if appropriate, may be entered against such party.

See King v. Commissioner, 87 T.C. 1213, 1217 (1986).

Here, neither petitioner's actual incapacity, nor the content and receipt of Bergman's letters, is in dispute. The only question is whether, as a matter of law, either of the letters was sufficient to notify respondent that Bergman's authority was terminated.[1] This matter is therefore ripe for summary judgment.[2]

The general rule under the common law is that a power of attorney is revoked by operation of law by the subsequent incapacity of either the principal or the agent.[3] The common law rule has not been modified in Florida by statute. Millman v. First Fed. Sav. & Loan Association, 198 So. 2d 338, 340 (Fla. Dist. Ct. App. 1967).

> It follows that an adjudication of incompetency * * * will effect such a revocation, as being a circumstance which is inconsistent with a continuation of the agency. See 1 Fla. Jur., Agency, sec. 18. [Id.]

---

[1] If either letter provided sufficient notice, the chain of extensions was broken and the statutory period of limitations for 1985 and 1986 would have expired, unless the underpayments for those years were due to fraud.

[2] At the hearing on this matter, respondent's counsel said, with regard to the second letter, "I think this particular issue is--well, as we discussed, ripe for a summary judgment motion." Respondent did not offer any testimony or affidavits alleging any intent by Bergman to mislead.

[3] Generally, the loss of capacity by a principal has the same effect upon the authority of the agent during the period of incapacity as has the principal's death. 1 Restatement, Agency 2d, sec. 122 (1957).

See also <u>Kuder v. United Natl. Bank</u>, 497 A.2d 1105, 1108 (D.C. App. 1985); <u>In re Berry's Estate</u>, 329 N.Y.S.2d 915, 916 (N.Y. Sur. 1972); cf. <u>In re Estate of Head</u>, 94 N.M. 656, 615 P.2d 271, 274 (App. 1980) (trial court's finding that defendant was mentally competent when he executed trust agreement, but incompetent when he executed amendment reversed; no evidence to support finding of incompetence).

In Florida, only a durable power of attorney is unaffected by the subsequent incapacity of the principal, Fla. Stat. Ann. sec. 709.08(1) (West Supp. 1996), and even a durable power is revoked by a judgment of total or partial incapacity by a court, as occurred here. See Fla. Stat. Ann. sec. 709.08(3)(b) (West Supp. 1996).

Respondent concedes that petitioner was, in fact, left mentally and physically incompetent by the stroke. Respondent's Form 2848 (Power of Attorney and Declaration of Representative) had, thus, already been revoked by operation of law when Bergman signed the Form 872 in 1992. The only issue is whether, in light of the letters from Bergman, it was reasonable for respondent to continue to rely on the power as authority for Bergman's representation.

It is undisputed that the Forms 872 are regular on their faces. Where a Form 872 is regular on its face and respondent reasonably relied on it, we have indicated that taxpayers may be

precluded by the application of estoppel or a similar doctrine from attacking the validity of the forms they signed, even if they later prove they were incompetent when they signed them. See Hollman v. Commissioner, 38 T.C. 251, 260 (1962); Dale v. Commissioner, T.C. Memo. 1982-654. However, those cases (and others cited by respondent) differ from the one before us. They involve consents signed by the taxpayer, not by a third party purporting to act on behalf of the taxpayer. More importantly, in those cases there was no evidence that the Commissioner had either actual notice or reason to know of the taxpayer's incapacity.

Apparent authority, not otherwise terminated, ends when the third person has notice of the termination of the agent's authority. 1 Restatement, Agency 2d, sec. 125 (1957). A third person has notice when he knows, has reason to know, should know, or has been given a notification of the occurrence of an event from which, if reasonable, he would draw the inference that the principal does not consent to have the agent so act for him, that the agent does not consent so to act for the principal, or that the transaction has become impossible of execution. 1 Restatement, Agency 2d, sec. 135 (1957). Revocation of the prior power of attorney need not be expressed; it can be implied from words and conduct. Whiting v. Marine Midland Bank-Western, 80 Misc. 2d 871, 365 N.Y.S.2d 628, 643 (Sup. Ct. 1975); see also

<u>Bernstein v. Centaur Ins. Co.</u>, 644 F. Supp. 1361, 1369 (S.D.N.Y. 1986) (plaintiffs could not reasonably rely on apparent authority of vice president of one of defendant's subsidiaries to bind defendant, when plaintiffs had actual notice that the vice president was no longer employed by the subsidiary); <u>Baker v. McCue-Moyle Dev. Co.</u>, 695 S.W.2d 906, 912 (Mo. Ct. App. 1984) (warranty deed not legal tender because when it was presented, the buyer knew that the partner who signed it no longer had authority to sign, as the other partner had notified the buyer of the dispute. Further, the buyer had no duty to express his reasons for objecting to the deed because they were obvious.); <u>In re Wolf Creek Valley Metro. Dist. No. IV</u>, 138 Bankr. 610, 618 (D. Colo. 1992) (even if a friend had served as an agent in the past, that relationship was clearly terminated when the friend explicitly notified corporate property owner that he could no longer serve as an intermediary between the parties).

We need not discuss Bergman's first letter because we believe the second letter and the Form 872 signed in 1992 are dispositive. The second letter says, "Because Mr. Halper is <u>presently not competent to authorize my agreement</u> * * * <u>I cannot sign</u> the Form 870 which you have enclosed." (Emphasis added.)

Respondent focuses on the word "presently" as casting doubt on petitioner's condition. However, we do not see any ambiguity. We think, rather, the word is simply used to distinguish between

the present and the past, in contrast to the next sentence: "As you may know, while he was competent, Mr. Halper believed that the assessed amounts were not accurate".

When Bergman signed the Form 872 in 1992, petitioner had been judged incapacitated and coplenary guardians had been appointed by the court. They were the only persons legally authorized to act on petitioner's behalf or to appoint a representative to do so. They did not appoint Mr. Bergman.

We need not speculate about why Bergman thought he had continuing authority to sign the Form 872 on behalf of petitioner, when he clearly (and correctly) understood he had no such authority to sign the Form 870. His authority to do either would, in fact, have arisen under the same power of attorney.

Regardless of Mr. Bergman's state of mind, his second letter should have raised a red flag for respondent, triggering further investigation. Bergman never tried to hide petitioner's condition; indeed, he was explicit about it. The second letter contains a clear statement of incompetency, sufficient to put respondent on notice that the power of attorney authorizing Bergman to represent petitioner was revoked. It was not reasonable for respondent to continue to deal with him as petitioner's representative.

Based upon our review of the record, we are satisfied that as to the Form 872 signed in 1992 there is no genuine issue of

material fact and that petitioner is entitled to partial summary judgment as a matter of law.  The chain of consents to extend the statutory period of limitations was broken.  Thus, we hold that the period of limitations for 1985 and 1986 expired, at the latest, on December 31, 1992 (the date of extension on the Form 872 signed in 1991).  Since the notice of deficiency was mailed to petitioners on September 19, 1994, the statutory period of limitations has expired for each of the tax years 1985 and 1986, unless the underpayment of tax was due to fraud.

To reflect the foregoing,

An order granting petitioner's motion for partial summary judgment will be issued.